FILED

2014 JUL 21 PM 1:53

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

RECEIVED
UNION CORRECTIONAL INSTITUTION
JUL 17 2014
BY _____ FOR MAILING

United States District Court
Middle District of Florida
Jacksonville Division

Akeem Muhammad,          Case No. 3:11-CV-1202-J-25MCR
        Plaintiff,

v.

M. Epperley, et. al.,
        Defendants.          /

## Plaintiff's Pretrial Narrative Statement

Plaintiff Akeem Muhammad, pro se, hereby submits his pretrial narrative statement as follows:

### a). Statement of Case

1). Plaintiff filed a civil action under 42 U.S.C. 1983 alleging that Defendants violated his 8th Amendment rights to be free from cruel and unusual punishment when they used unnecessary and excessive force on him on 8/27/11 or when they failed to intervene to stop it. Plaintiff seeks compensatory and punitive damages, any other relief he is entitled to, and a jury trial.

### b). Statement of Facts

2). Plaintiff was an inmate housed at Florida State Prison (FSP) and in cell B-1209 on 8-27-11.

1. of 22.

3). Plaintiff was born on 6/22/73, and thus was 38 years old on 8/27/11.

4). Plaintiff is a white male standing 5'5 or 5'6 feet in height.

5). As of 8/27/11, Plaintiff suffered from a major heart condition, congenital heart disease, spina biffida, and colitis.

6). As of 8/27/11, Plaintiff walked and moved around normally, did not require physical assistance to walk, walked standing straight up, and did not walk bending forward.

7). On 8/27/11, Plaintiff weighed approximately 130 pounds and was fasting for the month of Ramadan from astronomical twilight to sunset.

8). As of 8/27/11, Plaintiff did not have a history of (a). suffering from any psychological injury; (b). being under the care of a psychologist or psychiatrist; (c). being prescribed psychological medication; (d). attempting suicide; (e). inflicting injury on himself; (f). demonstrating bizzare behaviour; (g). faking injuries; (h). consuming alcohol or intoxicants; or (i). accusing prison staff of punching or physically beating him.

9). At no time on 8/27/11 was Plaintiff under the influence of any alcohol, drugs or intoxicants.

10). As of 8/27/11, Plaintiff was frail; was not muscular built; was not in good physical shape; and his body, ribs or sternum were not built or trained to withstand being punched.

11). FSP houses inmates in solitary confinement.

12). As of 8/27/11, FSP officers did not have a custom to touch or hold confinement inmates or grip their arm

2.

while escorting them with or without restraints. The only exception 🐾 was when confinement inmates were injured, sick, or unable to walk on their own.

13). As of 8/27/11, FSP officers had a custom to have inmate barbers shave or cut the hair of confinement inmates in hallways and in view of fixed video cameras.

14). As of 8/27/11, FSP officers never shaved confinement inmates themselves or cut their hair themselves.

15). As of 8/27/11, FSP officers never permitted inmate barbers to shave confinement inmates inside of shower cells.

16). As of 8/27/11, defendants John Burnsed, Blake Williams, Joshua Kelsey, and Timothy Herring were employed at FSP as correctional officers.

17). As of 8/27/11, defendant Michael Epperley was employed at FSP as a correctional captain and shift supervisor; and Michael Maddox as a correctional sergeant.

18). On 8/27/11, Defendants were on duty at FSP from 8:00 a.m. to 4:00 P.m.

19). As of 8/27/11, Plaintiff was familiar with Defendants from seeing them at FSP and from having brief routine encounters with them.

20). On 8/27/11, Williams and Burnsed stood approximately 6'2 feet in height, were in their mid-twenties, were muscular built, and weighed approximately 220 pounds.

21). As of 10:46 a.m. on 8/27/11, Plaintiff was not suffering from any physical injury; did not have any physical injury on his body, forehead, mouth, chest or rib area; there were no bruises, cuts, black and blue marks, or redness on his chest, forehead, or mouth;

his mouth was not swollen, cut or bleeding on either side; his ribs or sternum were not bruised, injured or in physical pain; and he did not have any pre-existing injury to his chest, ribs, sternum, mouth, or forehead.

22). On 8/27/11 at approximately 10:30 a.m., Plaintiff was locked in his cell sleeping, awoke from sleeping, and went to his cell sink to wash up.

23). On 8/27/11 at approximately 10:46 a.m., Epperley and Williams approached Plaintiff's cell door window, with Maddox standing behind Williams. Epperley and Williams ordered Plaintiff to submit to handcuffs so that his beard could be shaved off. Plaintiff agreed and turned around to be handcuffed. Epperley backed away from Plaintiff's cell door and Maddox moved up and opened the food slot in Plaintiff's cell door. Burnsed and Kelsey appeared on the scene in front of Plaintiff's cell door. Maddox, Williams and Burnsed stood at Plaintiff's cell door and one of them placed handcuffs on Plaintiff's hands behind his back through the food slot in Plaintiff's cell door. Maddox then backed away from Plaintiff's cell door and stood with Epperley and Kelsey looking at Williams and Burnsed at Plaintiff's cell door.

24). At approximately 10:49 a.m., Herring unlocked Plaintiff's cell door from a panel at the end of the hallway.

25). At approximately 10:49 a.m., Williams and Burnsed opened Plaintiff's cell door, and Plaintiff turned around and faced them. Williams then stepped halfway into Plaintiff's cell and made a quick motion with his fist or hand at Plaintiff, and Plaintiff spontaneously stepped back. Williams and Burnsed then walked in Plaintiff's

cell, and Plaintiff backed up to the rear of his cell. Williams then grabbed Plaintiff's right arm and Burnsed maliciously and sadistically, without need or provocation, violently punched Plaintiff real hard once in the middle of his chest; twice in his right ribs; once in his left sternum; once in his right sternum; once in his mouth on the left side; and once in his forehead on the right side, which caused Plaintiff to suffer a concussion, amnesia, and unconsciousness. Williams watched Burnsed punch Plaintiff, but failed to intervene to attempt to stop it. ~~Plaintiff~~ Plaintiff then fell to the ground unconscious. Williams or Burnsed then maliciously and sadistically stood on Plaintiff's left ribs and told Plaintiff to get up, however, Plaintiff was unresponsive and unconscious.

26). Epperley, Maddox and Kelsey stood in front of Plaintiff's cell and witnessed Burnsed punch Plaintiff in the middle of his chest the first time, but they failed to intervene to attempt to stop Burnsed from punching Plaintiff further and they walked off while hearing Burnsed continue punching Plaintiff. Kelsey walked over by cell B-1210, paused, then walked to Plaintiff's cell, looked at Plaintiff on the floor, then walked over by cell B-1210. Maddox walked over by cell B-1207, paused, and then walked off to the Officer's area. Epperley walked off to the Officer's area.

27). At approximately 10:50 a.m., Williams and Burnsed picked up Plaintiff off the ground. Plaintiff was disoriented, confused, not thinking straight, possibly unconscious or partly unconscious, ~~and~~ in a "drunk-like" state, and suffering a concussion. Williams and Burnsed,

while holding up Plaintiff by his forearms, physically took Plaintiff out of his cell and down the hallway to the B-Wing shower cell on the second floor (off camera) and left him therein. If not for Williams and Burnsed holding up Plaintiff by his forearms while taking him to the shower cell, Plaintiff would have fell to the floor.

28). Meanwhile, inmate Jared Hunt heard Burnsed punching Plaintiff. At approximately 10:55 a.m., Hunt, who was housed in cell B-1213, called out to Williams and Burnsed and admonished them for abusing Plaintiff.

29). Plaintiff remained in the shower cell unconscious and/or in a state of amnesia. The next thing Plaintiff remembers is that he "awoke" to find himself in a shower cell handcuffed behind his back, squatting down, spitting out blood through a swollen mouth, and suffering severe physical pain in his ribs, sternum and head. At approximately 11:15 a.m., (a few minutes after "waking up"), Plaintiff observed Herring standing at the entrence to the shower cell and looking at Plaintiff in the face. Herring then walked off down the hallway.

30). At approximately 11:21 a.m., an inmate barber plugged in an electric razor by cell B-1231 and the shower entrence.

31). At approximately 11:24 a.m., Williams and Burnsed entered the shower cell with the electric razor to shave Plaintiff's beard and hair/head. Plaintiff was still disorientated and confused, and he was unable to stand on his own, so Williams lifted Plaintiff to his feet and held him up against the bars while Burnsed shaved Plaintiff's beard and head.

32). At approximately 11:38 a.m., Williams and Burnsed

took hold of Plaintiff by the forearms because he was still having difficulty walking on his own, and while holding him up by his forearms, took him out of the shower cell, down the hallway back to his cell, closed the cell door, removed the handcuffs from Plaintiff's hands through the food slot in the cell door, and closed/locked the food slot. Plaintiff was compelled to walk slouched forward due to the severe physical pain he was experiencing in his ribs and sternum.

33). At approximately 11:39 a.m., Williams and Burnsed left Plaintiff's cell door and walked to cell B-1213 and threatened to do bodily harm to inmate Hunt for admonishing them. Williams threatened to brake Hunt's ribs. Williams and Burnsed then walked off laughing.

34). Epperley, Williams, Burnsed, Maddox, Kelsey and Herring then agreed to cover-up the incident and Plaintiff's resulting injuries, and to proceed as though nothing unusual occured.

35). At 4:00 p.m., the FSP shift changed and Defendants got off duty.

36). At approximately 4:10 p.m., Plaintiff declared a medical emergency to FSP Sergeant Ronnie Morris while he passed by Plaintiff's cell.

37). At approximately 4:25 p.m., Morris place restraints on Plaintiff and escorted him to the FSP clinic.

38). At approximately 4:30 p.m., Plaintiff was seen by FSP nurse T. Archer. Plaintiff advised Archer that he was physically beaten by an Officer, that he was knocked unconscious during the beating, that he remained unconscious for a long time, and that his ribs and sternum were in severe physical pain. Archer observed the following

physical injuries on plaintiff: a swollen mouth on the left
side; a cut mouth on the left side; a dark red bruise
the size of a fifty cent piece on the right side of his
forehead; a black and blue bruise on his upper right side
chest; a black and blue bruise on the middle of his chest;
a black and blue bruise on his chest covering his right
ribs; a red bruise on his chest covering his left
sternum; and a red bruise on his chest covering his
right sternum. Archer observed Plaintiff walking slouched
forward and moving with difficulty and grimace due to
the severe pain in his ribs and sternum. Archer referred
Plaintiff to be seen by an FSP doctor on Monday, 8/29/11,
because no doctor was on duty on the weekend. Archer
failed to perform a physical examination or check Plain-
tiff's nervous system, pupil size, thinking ability, coordi-
nation or reflexes to ascertain whether Plaintiff had
suffered a concussion. Archer simply looked at Plaintiff's
face, chest and rib cage area. Unknown to Plaintiff,
Archer failed to document Plaintiff's black and blue brui-
ses and minimized his other injuries; and failed to
document that Plaintiff was moving around with difficulty
and grimace and that Plaintiff complained of being
knocked unconscious for a long time, of headache, and
of severe pain in his ribs and sternum. Unknown to
Plaintiff, Archer falsified his medical record by noting
only the following injuries on Plaintiff (to make it appear
that the injuries could have been self-inflicted): Abrasion
® side forehead; redness to ® side chest; small red-
dened area above umbilicus; redness to Ⓛ clavicle;
and abrasion to Ⓛ side upper/lower lip.
   39). Morris then returned Plaintiff to his cell.

40). On 8/29/11, Plaintiff was seen by FSP doctor G.A. Espino for his follow-up. Plaintiff advised Espino that he was punched real hard in his ribs, chest, sternum, mouth and forehead; that he lost conscious after the first punch and regained conscious a long time later; that he was having headaches; and that his ribs and sternum were in severe pain with the pain increasing when he stood up straight, moved his upper body, coughed, etc. Espino observed Plaintiff moving around slouched forward with difficulty and grimace. Espino conducted a quick examination of Plaintiff's ribs, sternum, mouth, lungs and heart without having Plaintiff remove his shirt. Espino then advised Plaintiff that his ribs and sternum were bruised, but not broken or fractured, and he directed an officer to escort Plaintiff out of his office. Plaintiff asked Espino for pain medicine and X-rays to no avail. Plaintiff was expected to obtain ibuprofen from officers pursuant to FSP policy. Espino failed to check Plaintiff's nervous system, pupil size, thinking ability, coordination or reflexes, or to order any test to ascertain whether Plaintiff suffered a concussion on 8/27/11. Unknown to Plaintiff, Espino failed to document Plaintiff's complaints of having been knocked unconscious, of headaches, and of severe pain in his ribs and sternum; failed to document his findings from examining Plaintiff's ribs and sternum; failed to document his observation that Plaintiff was walking and moving around with difficulty and grimace; and falsified Plaintiff's medical record by noting that he noted the same injuries on Plaintiff that were noted by Archer on 8/27/11 and that Plaintiff had no major injuries.

41). On 8/29/11, Plaintiff submitted two medical grievances to the FSP warden complaining of being Knocked unconscious and having suffered a concussion on 8/27/11, and of suffering severe pain in his ribs and sternum since 8/27/11, and complaining that Espino was not doing anything about it. Espino denied both grievances and failed to document those complaints in Plaintiff's medical record.

42). On 8/30/11, Plaintiff submitted an inmate sick-call request to FSP medical complaining of being Knocked unconscious and suffering a concussion on 8/27/11, and complaining of headaches and severe pain in his ribs and sternum.

43). On 9/5/11 and 9/11/11, Plaintiff submitted inmate sick-call requests to FSP medical complaining of severe pain in his ribs and sternum since 8/27/11.

44). FSP sick-call nurse S.D. Tollic responded to each sick-call request by taking Plaintiff's vital signs through the food slot in Plaintiff's cell door, by advising Plaintiff that severe pain from bruised ribs and sternum may last up to 90 days, and by directing Plaintiff to obtain ibuprofen from officers. Tollick never had Plaintiff removed from his cell, never had Plaintiff remove his shirt he was wearing, never observed Plaintiff's chest or rib cage, and conducted her sick-calls "cell-front". Tollick observed Plaintiff walking to the cell door and moving around slouched forward and with difficulty and grimace. Unknown to Plaintiff, Tollick failed to document Plaintiff's complaints in his medical record; and Tollick falsified Plaintiff's medical record to state that she did'nt observe any injury or abnormality on Plaintiff's rib cage and that Plaintiff was moving around without difficulty or grimace.

45). On 9/14/11, Plaintiff was again seen by FSP doctor Espino. Plaintiff advised Espino that he continued to have severe pain in his ribs and sternum with the pain increasing when he coughed, sneezed, ~~moved his~~ moved his upper body in certain ways, etc. Espino examined Plaintiff's ribs and sternum and advised Plaintiff ~~that~~ that his ribs and sternum were bruised and that he would experience ~~such~~ such pain for awhile. However, Espino failed to document this in Plaintiff's medical record, and instead documented that Plaintiff's rib and sternum pain was caused by Costochondritis, which may be treated with rest, ibuprofen, analgesics, anti-inflammatory medication, cortisone injections, or surgery.

46). Costochondritis is a benign and often temporary inflammation of the costal cartilage, which connects each rib to the sternum at the costosternal joint. Costochondritis may be the result of physical trauma. Pain or tenderness to palpation usually occur on the sides of the sternum, affect multiple ribs, ~~and~~ and are often worsened with coughing, deep breathing, or physical activity.

47). On 9/22/11, Plaintiff submitted another inmate sick-call request to FSP medical complaining of pain in his ribs and sternum; and on 9/26/11, nurse Tollick responded as before.

48). FSP doctors and nurses are related to, loyal to, good friends with, and/or sexually involved with FSP officers and administrators, and they have an interest in officers not being found guilty of physically abusing inmates. FSP doctors and nurses further this interest by failing to document or correctly document inmates'

Visible injuries and complaints of internal injuries and by mini-mizing inmates' visible injuries and medical complaints following uses of force by FSP officers and following inmate claims of physical abuse by FSP officers. FSP administrative, security and medical staff all work together to further this interest, and this is why photographs of inmates' visible injuries are usually not taken. Additionally, FSP medical and administrative staff have an interest in reducing or saving costs for medical tests and treatment for inmates, and they further this interest by ignoring or minimizing cer-tain medical complaints and symptoms and by fabricating inmates' medical records.

49). Between 8/27/11 and around 10/13/11, Plaintiff daily and continuously requested ibuprofen from FSP officers and sergeants assigned to his housing unit, but was unable to obtain more than four tablets daily at the most, with some days being unable to obtain any.

50). During the time in question, FSP policy required FSP security staff to issue up to two tablets of ibuprofen every four hours to requesting inmates, however, FSP security staff had a custom to never issue more than four tablets of ibuprofen or any medicine daily to a requesting in-mate no matter how many times the inmate requested it.

51). As a result of Williams and/or Burnsed's unnecessary and excessive force on Plaintiff on 8/27/11, Plaintiff suf-fered a swollen mouth on the left side; cut and swollen lips on the left side; black, blue and purple bruise on the inside of his upper and lower lips on the left side; a dark red bruise (the size of a fifty cent piece) on the right side of his forehead; a black and blue bruise on his upper right side chest; a black and blue bruise on the middle

of his chest in the wind pipe area; a black and blue bruise on his right rib cage or chest; a red bruise on his chest covering his right sternum; a red bruise on his chest covering his left sternum; a concussion; amnesia and/or unconsciousness covering an approximate 24 minute period or for approximately 24 minutes; daily headaches from 8/27/11 until approximately 9/12/11; severely bruised left and right ribs and sternum; swollen left ribs; and severe physical pain in his left and right ribs and sternum for atleast 30 days with the pain increasing dramatically when he moved his upper body, stood up straight, breathed heavy, coughed, sneezed, laughed, talked loud, or moved in certain way while laying down.

### c). Rebuttal Facts

52). None of the Defendants wrote an incident report on 8/27/11.

53). Burnsed nor Williams searched Plaintiff's cell on 8/27/11.

54). Plaintiff was not guilty of violating any FSP rule or regulation on 8/27/11 besides saving food to accommodate his fast.

55). On 8/27/11, FSP Captain R. Bonsall and Duty Officer Jackson attempted to help cover-up the unnecessary and excessive force in question.

56). On 8/30/11, FSP shift supervisor and acting captain D. Cauwenburgh attempted to help cover-up the unnecessary and excessive force in question.

57). On 8/30/11, Williams further attempted to cover-up the unnecessary and excessive force in question.

58). On 9/6/11 and 9/7/11, FSP administrators attempted to cover-up the unnecessary and excessive force in question by denying Plaintiff's requests for them to preserve the fixed video camera recordings of part of the incident.

59). On 9/27/11, this court ordered the FSP warden to preserve the video recordings (in evidence) for 8/27/11 during the time in question.

60). On 8/29/11, Plaintiff submitted an emergency grievance to the FSP warden detailing the 8/27/11 unnecessary and excessive force and his resulting injuries, which the warden received on 8/29/11.

61). FSP inspector Hall attempted to cover-up the unnecessary and excessive force in question by conducting a sham investigation and falsifying documents.

62). During the time in question, FSP security staff had a custom to NEVER conduct a cell search with an inmate inside the cell with them.

63). On 8/27/11, there was never a sheet covering Plaintiff's cell back window, and there were never any pictures on Plaintiff's cell wall.

64). On 8/27/11, Plaintiff never asked Burnsed to shave his face with the grain to make it less painful for him.

65). Prior to 8/27/11, all FSP inmates did not "go off," cause commotion, or kick their cell door whenever they saw or heard an inmate being physically abused by security staff. Some did and some didn't.

66). Plaintiff never refused to participate in any investigation into the unnecessary and excessive force in question

# d). Trial Exhibits

1). Grievance no. 1108-205-459.

2). Grievance no. 11-6-28868.

3). Grievance no. 1108-205-464.

4). Grievance no. 1108-205-465.

5). Grievance no. 11-6-30197.

6). Grievance no. 11-6-34014.

7). Plaintiff's 8/30/11 inmate sick-call request.

8). Plaintiff's 9/5/11 inmate sick-call request.

9). Plaintiff's 9/11/11 inmate sick-call request.

10). Plaintiff's 9/22/11 inmate sick-call request.

11). Plaintiff's 10/13/11 inmate sick call request.

12). Plaintiff's inmate medical record from 8/27/11 to 10/14/11.

13). Plaintiff's inmate medical record, re: chronic illnesses.

14). Plaintiff's informal grievance no. 906-1129 dated 9/2/11.

15). Grievance no. 1109-205-070.

16). Court order dated 9/27/11 entered in Muhammad v. Herring, No. 3:11-CV-960-J-37TEM (M.D. Fla.).

17). DVD containing four seperate video files from the fixed wing cameras on the second floor of B-wing, Florida State Prison from 10:00 a.m. to 12:00 P.M., on 8/27/11.

18). Plaintiff's Daily Record of Special Housing, DC6-229, for 8/27/11.

19). Florida State Prison incident report no. 11-205-2382.

20). Florida State Prison incident report no. 11-205-2357.

21). The case file for case no. 11-2-9004 of the Bureau of State Investigations, Office of Inspector General, Fla. Dept. of Corrections.

22). Florida State Prison incident report no. 11-205-2373.

23). Grievance no. 11-6-28030.

23.5). FSP Pre-8/27/11 Policies and Procedures on escorting inmates, cell searches, and barbering. inmates.

24). Case file for case no. 11-2-9683 of the Bureau of State Investigations, Office of Inspector General, Fla. Dept. of Corrections.

25). Concussion-PubMed Health. A.D.A.M. Medical Encyclopedia. Atlanta (GA): A.D.A.M.: 2011 - http://www.ncbi.nlm.nih.gov/pubmedhealth

26). Amnesia: All-MayoClinic.com - http://www.mayoclinic.com

27). Rib injuries - http://www.nhs.uk/conditions/rib-injuries/Pages/Introduction.aspx

28). Human sternum - http://en.wikipedia.org/wiki/Human sternum

29). Unconsciousness - http://en.wikipedia.org/wiki/Unconsciousness

30). Costochondritis - http://en.wikipedia.org/wiki/Costochondritis

31). Rib - http://en.wikipedia.org/wiki/Rib


e). <u>Non-Inmate Witnesses</u>


1). <u>Jared Hunt</u>, 400 W. Colonial Drive, Orlando, FL 32804.

2). <u>John Palmer</u>, as warden of Florida State Prison, or his designee, Florida State Prison, 7819 NW 228 St., Raiford, FL 32026.

3). <u>Diane Andrews</u>, as warden of Union Correctional Institution, or her designee, Union Correctional Institution, 7819 NW 228 St., Raiford, FL 32026.

4). <u>R. Lafontant</u>, as Medical Director, or his/her designee, Union Correctional Institution, 7819 NW

228 st., Raiford, FL 32026.

5). <u>Jeffery Beasley</u>, Inspector General, or his designee, Fla. Dept. of Corrections, 501 S. Calhoun St., Tallahassee, FL 32399.

## f).   <u>Inmate   Witnesses</u>

1). <u>Akeem Muhammad</u>, DC# 706732, Union Correctional Institution, 7819 NW 228 st., Raiford, FL 32026.

2). <u>Jerry Jackson</u>, DC# X45682, Florida State Prison, 7819 NW 228 st., Raiford, FL 32026.

3). <u>Mario Bellamy</u>, DC# X35959, Florida State Prison, 7819 NW 228 St., Raiford, FL 32026.

4). <u>Kenneth Williams</u>, DC# J23356, Florida State Prison, 7819 NW 228 st., Raiford, FL 32026.

5). <u>Korian Dunkley</u>, DC# L04493, Florida State Prison, 7819 NW 228 st., Raiford, FL 32026.

6). <u>Andrew Vicks</u>, DC# X14064, Florida State Prison, 7819 NW 228 St., Raiford, FL 32026.

7). <u>Antonio L. Ward</u>, DC# 442770, Florida State Prison, 7819 NW 228 st., Raiford, FL 32026.

8). <u>Dexter Owens</u>, DC# 336381, Florida State Prison, 7819 NW 228 st., Raiford, FL 32026.

## g). <u>Anticipated Testimony Of Each Witness</u>

1). <u>Jared Hunt</u>: For anticipated testimony, see: DOC. 73 at Exhibit "B" (Affidavit of Jared Hunt), which is incorporated herein. Furthermore, Hunt will testify as follows: As of 8/27/11, Plaintiff walked and moved around normally, did not require physical assistance to

walk, walked standing straight up, and did not walk bending forward.

2). <u>John Palmer</u>: Plaintiff's trial exhibits 17, 19, 20, 22 and 23.5 above are authentic. As of 8/27/11, FSP security staff were not required to and did not have a custom to touch or hold confinement inmates or grip their arm while escorting them. The only exception was when confinement inmates were injured, sick or unable to walk on their own. As of 8/27/11, FSP security staff were required to and had a custom to have inmate ~~barbers~~ barbers shave confinement inmates or cut their hair in hallways and in view of fixed video cameras. As of 8/27/11, FSP security staff were not required to and did not have a custom to shave confinement inmates themselves or cut their hair themselves. As of 8/27/11, it was not permitted for inmate barbers or security staff to shave confinement inmates or cut their hair inside of shower cells. On 8/27/11, neither of the Defendants wrote an incident report regarding Plaintiff. As of 8/27/11, FSP staff were required to write an incident report before getting off duty whenever they were directed to write an incident report. As of 8/27/11, FSP security staff were required to remove a confinement inmate from his cell before they searched the cell. He viewed the DVD video ~~evidence~~ in evidence, and Defendants Burnsed, Williams or Epperley should have written an incident report on 8/27/11 regarding their alleged interactions with Plaintiff on 8/27/11.

3). <u>Diane Andrews</u>: Plaintiff's trial exhibits 1, 2, 3, 4, 5, 6, ~~13~~ 14, 15, 18, and 23 above are authentic.

4). <u>R. Lafontant</u>: Plaintiff's trial exhibits 7, 8, 9,

10, 11, 12 and 13 above are authentic.

5). <u>Jeffery Beasley</u>: Plaintiff's trial exhibits 21 and 24 above are authentic.

6). <u>Akeem Muhammad</u>: for anticipated testimony, see: DOC. 73 at Exhibit "A" (Affidavit of Akeem Muhammad), which is encorporated herein.

7). <u>Jerry Jackson</u>: for anticipated testimony, See: DOC. 73 at Exhibit "C" (Declaration of Jerry Jackson), which is encorporated herein.

8). <u>Mario Bellamy</u>: for anticipated testimony, See: DOC. 73 at Exhibits "D" and "E" (Affidavits of Mario Bellamy), which are encorporated herein.

9). <u>Kenneth Williams</u>: for anticipated testimony, See: DOC. 73 at Exhibit "F" (Affidavit of Kenneth Williams), which is encorporated herein.

10). <u>Korian Dunkley</u>: for anticipated testimony, See: DOC. 73 at Exhibit "G" (Affidavit of Korian Dunkley), which is encorporated herein.

11). <u>Andrew Vicks</u>: for anticipated testimony, See: DOC. 73 at Exhibit "H" (Affidavit of Andrew Vicks) and Exhibit "M" (Declaration of Andrew Vicks), which are encorporated herein.

12). <u>Antonio Ward</u>: for anticipated testimony, See: DOC. 73 at Exhibit "K" (Declaration of Antonio Ward), which is encorporated herein.

13). <u>Dexter Owens</u>: On 1/28/13, he was brought before ~~FSP~~ FSP doctor G.A. Espino in full body restraints for an examination of his numb foot. Dr. Espino directed him to remove his sock. He attempted to remove his sock while restrained in handcuffs behind his back, but was unable to do so. Dr. Espino watched his attempt

for three seconds and then told him that his foot was fine without seeing or examining it, and Espino directed an officer to remove him from the office. Espino then falsified his medical record ~~the~~ by ~~recording~~ recording that he examined his foot and found nothing wrong with it.

14). <u>Akeem Muhammad</u>, <u>Jerry Jackson</u>, <u>Mario Bellamy</u>, <u>Kenneth Williams</u>, <u>Korian Dunkley</u>, <u>Andrew Vicks</u>, <u>Antonio Ward</u> and <u>Dexter Owens</u>: (Further anticipated testimony from all of them): As of 8/27/11, Plaintiff walked and moved around normally, did not require physical assistance to walk, walked standing straight up, and did not walk bending forward. As of 8/27/11, FSP security staff did not have a custom or they did not touch or hold confinement inmates or grip their arm while escorting them; the only exception was when confinement inmates were injured, sick or unable to walk on their own. As of 8/27/11, FSP security staff had a custom to have inmate barbers shave confinement inmates or cut their hair in hallways and in view of fixed video cameras. As of 8/27/11, FSP security staff never shaved confinement inmates or cut their hair themselves. As of 8/27/11, FSP security staff never permitted inmate barbers to shave confinement inmates or cut their hair inside of shower cells. As of 8/27/11, FSP security staff never conducted cell searches with an inmate inside the cell with them. As of 8/27/11, all FSP confinement inmates did not "go off", cause commotion, or kick their cell door whenever they saw or heard an officer physically abusing an inmate; some confinement inmates did so and some did'nt.

h). Changes of Places of Incarceration

Prison rules prohibit inmates from corresponding with other inmates or from receiving information ~~━━━~~ regarding other inmates through routine mail. Thus, Plaintiff would have to violate prison rules in order to monitor his inmate witnesses OR to ascertain whether they have changed places of incarceration. Accordingly, Plaintiff requests the court to require Defendants to notify the court of any change in Plaintiff's inmate-witnesses' places of incarceration.

i). Death Row Notification

None of Plaintiff's inmate-witnesses are on death row.

## Conclusion

Wherefore, Plaintiff submits his pretrial narrative statement.

Respectfully Submitted,

Akeem Muhammad #706732
Union C.I.
7819 NW 228 St.
Raiford, FL 32026

## Certificate of Service

I certify that the foregoing "Plaintiff's Pretrial Narrative Statement" was mailed via Prison officials to Jamie Braun, AAG, The Capitol, PL-01, Tallahassee, FL 32399, on 7-17 - 14.

Akeem Muhammad